UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHELLE MAZYCK,

                    Plaintiff,                    **DECISION AND ORDER**

            v.                                    1:18-CV-00627 EAW

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____


## <u>INTRODUCTION</u>

Represented by counsel, plaintiff Michelle Mazyck ("Plaintiff") brings this action

pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final

decision of the Commissioner of Social Security (the "Commissioner," or "Defendant")

denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has

jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are

the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the

Federal Rules of Civil Procedure. (Dkt. 11; Dkt. 14). For the reasons discussed below, the

Commissioner's motion (Dkt. 14) is granted and Plaintiff's motion (Dkt. 11) is denied.

# BACKGROUND

Plaintiff protectively filed her application for DIB on September 26, 2014. (Dkt. 6 at 19, 64).[1] In her application, Plaintiff alleged disability beginning June 27, 2013, due to fibromyalgia, manic depression, anxiety, and migraines. (*Id*. at 19, 65). Plaintiff's application was initially denied on January 8, 2015. (*Id.* at 19, 64-75). At Plaintiff's request, a video hearing was held before administrative law judge ("ALJ") Benjamin Chaykin on February 9, 2017. (*Id.* at 19, 34-63). Plaintiff appeared with her attorney in Buffalo, New York, and the ALJ presided over the hearing from Alexandria, Virginia. (*Id*.). On April 7, 2017, the ALJ issued an unfavorable decision. (*Id.* at 16-33). Plaintiff requested Appeals Council review; her request was denied on March 26, 2018, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10). This action followed.

# LEGAL STANDARD

## I.  District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is

---

[1]  When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 404.1520(c).  If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

I.      **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2018. (Dkt. 6 at 21). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since June 27, 2013, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of fibromyalgia and degenerative disc disease of the lumbar spine. (*Id.*). The ALJ also found that Plaintiff suffered from the non-severe mental impairments of anxiety disorder, affective disorder, and attention deficit disorder, as well as the non-severe impairments of migraines, kidney stones, status post cholecystectomy, and left ulnar nerve lesion. (*Id.* at 21-24).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 24). The ALJ particularly considered the criteria of Listing 1.04 in reaching this determination. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following additional limitations:

> [S]he can never climb ladders, ropes, or scaffolds; she can occasionally climb ramps and stairs; she can occasionally balance, stoop, kneel, crouch, and crawl; she can perform frequent reaching, handling, fingering, and operation

of foot controls, bilaterally; and she can have no exposure to dangerous hazards, such as unprotected heights or dangerous machinery.

(*Id.*).  At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a bill collector.  (*Id.* at 26).

The ALJ also made an alternative finding at step five.  (*Id.* at 27).  The ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of mail room clerk, office helper, and small products assembler.  (*Id.* at 27-28).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.* at 28).

## II.    The Commissioner's Determination Is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that (1) the ALJ failed to find that Plaintiff's anxiety disorder and affective disorder were severe impairments,[2] and (2) the ALJ failed to properly evaluate the objective findings regarding Plaintiff's physical limitations.  (Dkt. 11-1 at 17-22).  The

---

[2]    Plaintiff also argues the ALJ failed to properly evaluate the objective findings regarding Plaintiff's mental impairments, but because these arguments significantly overlap with Plaintiff's step two arguments, the Court addresses them together.

Court has considered each of these arguments and, for the reasons discussed below, finds them to be without merit.

## A.    <u>Step Two Determination</u>

At step two of the disability analysis, the ALJ determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). The Commissioner's Regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers and usual work situations"; and "[d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1522(b).

"The claimant bears the burden of presenting evidence establishing severity." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012), *adopted*, 32 F. Supp. 3d 253 (N.D.N.Y. 2012). Step two's "severity" requirement is *de minimis* and is meant only to screen out the weakest of claims. *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). However, despite this lenient standard, the "'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" *Taylor*, 32 F. Supp. 3d at 265 (quoting *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). Rather, "to be considered severe, an impairment or combination of impairments must cause 'more than minimal

limitations in [a claimant's] ability to perform work-related functions.'" *Windom v. Berryhill*, No. 6:17-cv-06720-MAT, 2018 WL 4960491, at *3 (W.D.N.Y. Oct. 14, 2018) (alteration in original) (quoting *Donahue v. Colvin*, No. 6:17-CV-06838(MAT), 2018 WL 2354986, at *5 (W.D.N.Y. May 24, 2018)).

"[T]he Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments. 20 C.F.R. § 404.1520a. These regulations require application of a 'special technique' at the second and third steps of the five-step framework[.]" *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)); *see* 20 C.F.R. § 404.920a. First, the ALJ determines "whether the claimant has a 'medically determinable mental impairment.'" *Id.* at 265-66 (quoting 20 C.F.R. § 404.1520a(b)(1)). If the ALJ finds the claimant has a medically determinable mental impairment, he next "must rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *id.*, which specifies the following four broad functional areas: (1) understanding, remembering, or applying information; (2) interaction with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). If the degree of limitation is rated as "none" or "mild," the ALJ will generally conclude that the claimant's impairments are not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. § 1520a(d)(1).

In the instant matter, the ALJ applied the special technique and considered "the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders" with regards to Plaintiff's medically determinable impairments of anxiety

disorder and affective disorder. (Dkt. 6 at 22). The ALJ found Plaintiff had a mild limitation in the functional area of understanding, remembering, or applying information because she reported trouble remembering things, but denied requiring reminders to take medications or to take care of personal needs, and reported being able to follow instructions. (*Id.*; *see id.* at 180, 185-86). Further, the ALJ found Plaintiff had no limitation in interacting with others because although she reported decreased social interaction, she could go to the grocery store, kept in touch with friends and family, and visited with family sometimes. (*Id.* at 22; *see id.* at 182-83, 189). The ALJ also found that Plaintiff had a mild limitation in concentrating, persisting, or maintaining pace because she reported having difficulty paying attention sometimes, but was able to read to her daughter, drive, cook, do chores subject to physical limitations, pay bills, use a bank account, make grocery lists, play games on her cellphone, and said should could finish what she starts unless limited by pain or fatigue. (*Id.* at 22; *see id.* at 179-80, 182, 185). Additionally, the ALJ found that Plaintiff had no limitation in adapting or managing herself because although she reported some problems with personal care, she attributed the problems primarily to physical limitations, and her examinations noted that Plaintiff was well-groomed. (*Id.* at 22; *see id.* at 179-82, 301-02). Because the ALJ found that Plaintiff's mental impairments caused no more than a mild limitation in any of these areas, he determined that the impairments were non-severe. (*Id.* at 22).

In making these determinations, the ALJ gave great weight to the opinion of state agency psychiatric consultant G. Kleinerman, M.D. because "it was based on a thorough review of the evidence and is generally consistent with the record as a whole," and because

"Dr. Kleinerman is a highly qualified mental health specialist who is also an expert in Social Security disability analysis." (*Id.* at 23). The ALJ gave moderate weight to the opinion of consultative examiner Susan Santarpia, Ph.D. because it was "somewhat consistent with the other medical evidence." (*Id.*). The ALJ also gave little weight to the opinions of Nurse Practitioner ("NP") Stephania Fynn-Aikins and Licensed Mental Health Counselor ("LMHC") Courtney Carey because they were "not supported by the objective medical evidence or the longitudinal treatment history," citing to examples from the record. (*Id.* at 23-24). Further, the ALJ gave little weight to Plaintiff's Global Assessment of Functioning score. (*Id.* at 24).

The record before the Court demonstrates that the ALJ's step two decision was supported by substantial evidence. The ALJ thoroughly discussed the medical opinions relevant to Plaintiff's mental impairments, assigned weight to each of them, and explained the weight he gave using various factors listed in the regulations. *See* 20 C.F.R. § 404.927(d)(2); *Monell v. Astrue*, No. 8:08-CV-0821, 2009 WL 4730226, at *3 (N.D.N.Y. Dec. 3, 2009) (finding substantial evidence supported step two determination where the ALJ assigned weight to the relevant medical opinions and explained the weight he gave to each opinion by referencing various factors listed in the regulations). Moreover, as discussed above, the ALJ applied the "special technique" for assessing mental impairments as required by the regulations. *See Monell*, 2009 WL 4730226, at *3 (finding substantial evidence supported ALJ's step two determination were ALJ "applied the 'special technique'").

Plaintiff argues that more weight should have been given to the opinions of NP Fynn-Aikins and LMHC Carey due to their treating relationship with Plaintiff. While "an opinion from a treating physician is given more weight," nurse practitioners "are defined as 'other sources' whose opinions may be considered with respect to the severity of the [plaintiff]'s impairment and ability to work, but need not be assigned controlling weight." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008). Additionally, "the ALJ was under no obligation to weigh the [mental health] counselor's assessment of Plaintiff in his decision." *Esteves v. Barnhart*, 492 F. Supp. 2d 275, 281-82 (W.D.N.Y. 2007); *see Bliss v. Comm'r of Soc. Sec.*, 406 F. App'x 541 (2d Cir. 2011) ("[T]he assessment by the social worker is ineligible to receive controlling weight because social workers do not qualify as 'acceptable medical source[s].'" (alteration in original) (citing 20 C.F.R. §§ 404.1513(a), 404.1527(a)(2))). While the ALJ was required to assess these opinions, he was not required to give them any special weight.

Plaintiff further argues the ALJ's finding that the opinions of NP Fynn-Aikins and LMHC Carey were not supported by the objective medical evidence or the longitudinal treatment history is erroneous. (Dkt. 11-1 at 19-20). Plaintiff points to an October 4, 2016, appointment with NP Fynn-Aikins where Plaintiff reported feelings of irritability and frustration with an anxious mood (Dkt. 6 at 561), as well as various portions of the record where Plaintiff was noted to have cried at doctor's appointments (*see, e.g.*, *id.* at 313, 390, 420). However, viewing the record as a whole, there is substantial evidence supporting the ALJ's contention that the medical opinions were inconsistent with the medical evidence of record. Treatment notes from a month after the medical source statement made by NP

Fynn-Aikins state that Plaintiff's symptoms were effectively managed with medication and therapy, her mood was euthymic, she was well groomed, her speech was normal, and her thought processes were logical and goal directed. (*Id.* at 416). Subsequent treatment notes from NP Fynn-Aikins also describe Plaintiff as oriented and well groomed, and as having normal speech and logical, goal directed thought processes. (*Id.* at 438-39, 447-48, 474-75, 561-62). Additionally, LMHC Carey's treatment notes reflect improvement in Plaintiff's depression and anxiety. (*See id.* at 483, 551-52, 556-58). "[I]t is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record where the record provides sufficient evidence for such a resolution," *Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012), and here the ALJ properly determined he could render a decision based on the other medical opinion evidence of record.

Plaintiff also argues that the opinion of Dr. Kleinerman was "merely a simple concurrence" with the opinion of Single-Decision Maker ("SDM") Kathleen Mickney, and is therefore not entitled to any evidentiary weight. (Dkt. 15 at 3); *see Elliott v. Comm'r of Soc. Sec.*, No. 16-CV-672-FPG, 2018 WL 4539579, at *6 (W.D.N.Y. Sept. 21, 2018) ("The SSA has instructed ALJs not to afford SDM opinions any evidentiary weight at the administrative hearing level, which has led numerous courts to conclude that assigning any evidentiary weight to a SDM's opinion is an error." (quotation omitted)). However, review of Dr. Kleinerman's opinion demonstrates that it was assessed based on a fulsome review of Plaintiff's medical record, including her visits with Nurse Practitioner Fynn-Aikins and LMHC Carey. (*See* Dkt. 6 at 70 (discussing notes from September 14, 2014 appointment

with Nurse Practitioner Fynn-Aikins and October 14, 2014 appointment with LMHC Carey)).

Plaintiff further argues that there were approximately 26 months between Dr. Kleinerman's opinion and the date of the hearing, and therefore his opinion should be given less weight. The Court notes there was a period of approximately 28 months between the opinion of NP Fynn-Aikins, which Plaintiff contends should receive controlling weight, and the hearing. (*Id.* at 36, 300). In any event, the time between Dr. Kleinerman's opinion and the hearing is not dispositive here. "[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015). "A medical opinion may be stale if it does not account for the claimant's deteriorating condition." *Carney v. Berryhill*, No. 16-CV-269-FPG, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017). However, a medical opinion is not necessarily stale simply based on its age. A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age. *See Andrews v. Berryhill*, No. 17-CV-6368 (MAT), 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) (ALJ did not err in relying on dated opinions where there was no indication the plaintiff's "condition had significantly deteriorated after the issuance of . . . [the] opinions such that they were rendered stale or incomplete"). Here, the medical evidence of record subsequent to Dr. Kleinerman's opinion consistently describes Plaintiff as well groomed, cooperative, and attentive, and as having logical and goal directed thought processes as well as fair to good concentration. (*See* Dkt. 6 at 415, 433-34, 438-39, 447-48, 475, 564-65, 569-70). In other

words, the medical evidence of record does not support a finding that Plaintiff's mental condition deteriorated after Dr. Kleinerman's opinion, and the Court finds his opinion is not stale.

For all these reasons, the Court finds no error in the ALJ's conclusion at step two that Plaintiff's mental health impairments were non-severe. However, even if the ALJ's step two determination was erroneous, given the thorough discussion of Plaintiff's history of mental impairments in the written determination, any error would be harmless. As explained in *Guerra v. Commissioner of Social Security*, No. 1:16-CV-00991 (MAT), 2018 WL 3751292 (W.D.N.Y. Aug. 7, 2018), *aff'd sub nom. Guerra v. Saul*, 778 F. App'x 75 (2d Cir. 2019):

> At step two, the ALJ is required to consider whether a claimant's medically determinable impairments are severe. Notably, "[i]t is the claimant's burden to show at step two that she has a severe impairment." *Rye v. Colvin*, No. 2:14-CV-170, 2016 WL 632242, at *3 (D. Vt. Feb. 17, 2016) (internal quotation omitted). A step two error is not reversible and does not necessitate remand where the record is devoid of evidence that the allegedly omitted impairments were severe. . . .

> Moreover, "[c]ourts have developed a specialized variant of harmless-error analysis with respect to Step 2 severity errors in social security proceedings. . . . [W]hen an administrative law judge identifies some severe impairments at Step 2, and then proceeds through [the] sequential evaluation on the basis of [the] combined effects of all impairments, including those erroneously found to be non severe, an error in failing to identify all severe impairments at Step 2 is harmless." *Snyder v. Colvin*, No. 5:13-CV-585 GLS/ESH, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014); *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (step two error was harmless where all of the claimant's conditions "were considered during the subsequent steps"). "Specifically, when functional effects of impairments erroneously determined to be non-severe at Step 2 are, nonetheless, fully considered and factored into subsequent residual functional capacity assessments, a reviewing court can confidently conclude that the same result

would have been reached absent the error." *Snyder*, 2014 WL 3107962 at
*5.

*Id.* at *3; *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (where
ALJ excluded the plaintiff's anxiety disorder and panic disorder from his review, finding
harmless error because the ALJ identified other severe impairments and proceeded with
the subsequent steps, in which the ALJ specifically considered the plaintiff's anxiety and
panic attacks); *Panfil v. Comm'r of Soc. Sec.*, No. 16-CV-947-MJR, 2018 WL 4610531, at
*4 (W.D.N.Y. Sept. 26, 2018) ("To the extent the ALJ erred in not including occipital
neuralgia, myofascial pain, cervicalgia, and personality disorder in his list of severe
impairments, the error was harmless because the ALJ proceeded beyond step two and
considered these impairments at the remaining steps.").

As discussed above, the written determination contains a thorough and lengthy
discussion of Plaintiff's mental impairments. Additionally, the ALJ specifically noted that
he would "consider all of [Plaintiff]'s impairments, including impairments that are not
severe when assessing the claims at other steps of the sequential evaluation process,
including when assessing [Plaintiff]'s residual functional capacity." (Dkt. 6 at 21). The
ALJ further made an alternative step five finding that explicitly took any potential mental
limitations into account. (*Id.* at 28 ("[T]he vocational expert provided these representative
occupations in response to a more restrictive residual functional capacity, which further
limited the hypothetical individual to simple tasks, simple instructions, and simple work-
related decisions in a static work environment, with few changes in the work setting, in
addition to the limitations described in [Plaintiff]'s residual functional capacity. Therefore,

even if [Plaintiff]'s mental impairments were found to limit her to simple static work, there would be a significant number of jobs that could be performed in the national economy.")). Accordingly, even if the ALJ failed to properly consider certain mental health impairments at step two or in formulating his RFC finding, any such error was harmless.

### B.     <u>Physical Limitations in the RFC</u>

Plaintiff also contends the ALJ failed to properly evaluate the evidence of record regarding Plaintiff's physical limitations when determining her RFC. (Dkt. 11-1 at 20-22). The Court finds the ALJ's evaluation of Plaintiff's allegations regarding her physical capabilities is supported by substantial evidence for the following reasons.

The ALJ, who has the "opportunity to observe witnesses' demeanor, candor, fairness, intelligence and manner of testifying," is "best-positioned to make accurate credibility determinations." *Whiting v. Astrue*, No. CIV.A. 1:12-274, 2013 WL 427171, at *6 (N.D.N.Y. Jan. 15, 2013), *adopted*, 2013 WL 427166 (N.D.N.Y. Feb. 4, 2013). As such, "credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." *Perez v. Barnhart*, 440 F. Supp. 2d 229, 235 (W.D.N.Y. 2006) (quotation omitted).

In assessing the credibility of a claimant's subjective complaints, the Commissioner's regulations require ALJs to employ a two-step inquiry. *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010). "First, the ALJ must determine whether the claimant suffers from a 'medically determinable impairment[ ] that could reasonably be expected to produce'" her symptoms. *Id.* (quoting 20 C.F.R. § 404.1529(c)(1)). "Second, the ALJ must evaluate the intensity and persistence of those symptoms

considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Id.*

In this case, the ALJ applied the two-step inquiry. At the first step, he found that Plaintiff's "medically determinable impairments could have reasonably been expected to cause the alleged symptoms" but that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Dkt. 6 at 25). In making this determination, the ALJ specifically considered MRIs of Plaintiff's spine taken in August 2013 as compared to an MRI taken in March 2012. (*Id.*). The ALJ noted that the August 2013 MRI of the lumbar spine "showed mild diffuse bulges at multiple levels, but no indication of focal disc herniation or spinal stenosis"; the MRI of the thoracic spine "showed small disc herniation at multiple levels, but findings were stable compared to an MRI performed in March 2012"; and the MRI of the cervical spine "showed mild degenerative changes with straightening of the normal cervical lordosis with subtle reversal centered at C4-6, but no evidence of instability." (*Id.* at 25, 208-10).

The ALJ also considered the findings of physical examinations of Plaintiff. He discussed the November 2014 examination of consultative examiner John Schwab, D.O., which noted Plaintiff had a normal gait, could walk on her heels and toes without difficulty, could squat three-quarters of the way down, did not need help changing for the examination or climbing on or off the examination table, and could rise from a chair without difficulty. (*Id.* at 25-26, 257). Dr. Schwab also observed that Plaintiff had full range of motion in her

cervical spine, lumbar spine, and all her extremities. (*Id.* at 26, 258). Dr. Schwab did note Plaintiff had two trigger points each in her neck, knees, hips, and low back, but found Plaintiff's strength, sensation, and reflexes were normal, that her hand and finger dexterity were intact, and that her grip strength was normal. (*Id.* at 26, 258). Additionally the ALJ found that other physical examinations in the record noted Plaintiff had tenderness in the spine, muscles, and joints (*id.* at 26; *see, e.g.*, *id.* at 224, 324), but that her gait, motor strength, sensation, and reflexes have typically been normal and her straight leg tests have been negative (*id.* at 26; *see, e.g.*, *id.* at 257, 388, 394, 396, 398, 400, 403-404, 406-08, 420, 443, 459, 466, 479, 494, 510, 512, 514-17, 521-25, 574).

The ALJ found that Plaintiff's alleged symptoms were not fully supported by her longitudinal treatment history. (*Id.* at 26). The ALJ stated that Plaintiff's treatment for her pain has been "routine and conservative," noting she has been prescribed pain medications on a regular basis, only received one hip joint injection, and "did not see a rheumatologist from 2013 to December 2016." (*Id.*). Next, the ALJ found that Plaintiff's activities of daily living were not "limited to the extent that would be expected given the complaints of disabling symptoms and limitations," specifically pointing to Plaintiff's ability "to cook, clean, shop, drive, and care for a young child" as well as "perform personal care independently." (*Id.*). The ALJ also assessed the medical opinion evidence of record. (*Id.*). He assigned little weight to the opinion of Dr. Schwab who opined that Plaintiff had no restrictions because Plaintiff's testimony at the hearing about her pain supported greater limitations. (*Id.*). Additionally, the ALJ gave little weight to the opinions of Eugene Gosy,

M.D. and NP Elizabeth Ayla because they did not provide specific functional limitations and were of limited probative value. (*Id.*).

Plaintiff argues that the ALJ misrepresented the results of the MRIs by stating that the imaging reports "showed few significant findings." (Dkt. 11-1 at 20-21). Plaintiff contends that the MRI reports detailed 15 abnormal discs, making the ALJ's statement a misrepresentation. (*Id.*). However, contrary to Plaintiff's arguments, the ALJ acknowledged these results but also noted the overall impressions from the MRI reports, which stated that Plaintiff's conditions were "stable" and/or "mild." (Dkt. 6 at 21, 209-10, 213). Accordingly, the evidence of record supports the ALJ's characterization of the results of the MRIs.

Plaintiff also argues that the ALJ's finding that Plaintiff's allegations are not entirely consistent with the physical examination findings is a misrepresentation. Plaintiff points to the ALJ's accordance of little weight to Dr. Schwab's opinion of Plaintiff's physical limitations. However, an ALJ can rely on the underlying assessment from a consultative opinion in making his determination even if that opinion has been discounted. *See Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (holding the ALJ did not have further obligation to supplement record after discounting physician opinion but "tak[ing] into account many of [the physician]'s findings"). Further, in assessing Plaintiff's RFC, the ALJ was free "to credit some of [P]laintiff's statements while discrediting others." *Dougherty-Noteboom v. Comm'r*, No. 17-CV-00243-HBS, 2018 WL 3866671, at *10 (W.D.N.Y. Aug. 15, 2018); *see also Beaman v. Comm'r of Soc. Sec.*, No. 1:18-CV-01344 EAW, 2020 WL 473618, at *5 (W.D.N.Y. Jan. 28, 2020) (finding no error where "the ALJ

fashioned her RFC finding by referring to Dr. Schwab's opinion and incorporating additional restrictions based on Plaintiff's own testimony").

Plaintiff further contends that the ALJ's findings regarding Plaintiff's other physical examinations were a "gross understatement," and notes that the examinations "constantly describe tenderness of Plaintiff's spine, muscles, and joints, and limited range of motion of the lumbar spine." (Dkt. 11-1 at 21-22). Contrary to Plaintiff's characterization of the ALJ's opinion, the ALJ acknowledges that Plaintiff's "[o]ther examinations have shown tenderness in the spine, muscles, and joints," but explained that those examinations also showed that her gait, motor strength, sensation, and reflexes have typically been normal and her straight leg tests have been negative. (Dkt. 6 at 26). Plaintiff does not argue that the ALJ's discussion of these physical capabilities was a mischaracterization; nor could she—as discussed above, the ALJ's description of the results of Plaintiff's physical examinations is supported by the evidence of record. (*Id.* at 26; *see, e.g.*, *id.* at 257, 388, 394, 396, 398, 400, 403-404, 406-08, 420, 443, 459, 466, 479, 494, 510, 512, 514-17, 521-25, 574).

Finally, Plaintiff argues that the ALJ's finding that Plaintiff's allegations were not "fully supported by the longitudinal treatment history" because her treatment was "primarily routine and conservative" is untrue. (Dkt. 11-1 at 22). The record before the Court shows that the primary way Plaintiff treated her pain was through medication. Plaintiff notes that at the rheumatology consultation she went to on January 23, 2015, the rheumatologist recommended that she continue her medications. (Dkt. 11-1 at 23; Dkt. 6

at 390-92).[3]  Additionally, NP Fynn-Aikins noted that medicine seemed to effectively control Plaintiff's symptoms.  (Dkt. 6 at 416).  Further, Plaintiff was repeatedly advised to exercise, stretch, and strengthen her core for pain complaints, but did not do so.  (*Id.* at 315, 330, 391, 421, 444, 468, 575).  Using medication and physical therapy to treat symptoms is considered to be a "conservative" treatment, *see Pahl v. Berryhill*, No. 16-CV-538S, 2018 WL 4327813, at *5 (W.D.N.Y. Sept. 11, 2018) ("That Dr. Huang's prescribed treatments of medication, physical therapy, and increased walking—as opposed to surgery or injections—were conservative supports the ALJ's determination that plaintiff's pain was not as debilitating as she testified."), and it was proper for the ALJ to consider Plaintiff's noncompliance and conservative treatment in evaluating her credibility, *Lee v. Colvin*, No. 13-CV-1151-JTC, 2015 WL 3505791, at *6 (W.D.N.Y. June 3, 2015) ("The ALJ was permitted to consider plaintiff's noncompliance with treatment as a factor weighing against his credibility."); *see Jackson v. Barnhart*, 2008 WL 1848624, at *11 (W.D.N.Y. Apr. 23,

---

[3]  Plaintiff refers to this rheumatology consultation in an attempt to show that the ALJ made a material misrepresentation—the ALJ stated in the decision that Plaintiff did not see a rheumatologist from 2013 to December 2016.  (Dkt. 6 at 26).  However, to the extent the ALJ's statement was mistaken, the Court finds the error is not material.  As discussed above, the rheumatologist recommended that Plaintiff continue with her current course of treatment, *i.e.*, taking medication.  Additionally, the Court does not find that one rheumatology appointment over the course of three years nullifies the ALJ's finding that Plaintiff's treatment was primarily routine and conservative.  *See Cillari v. Colvin*, No. 13CV4154, 2015 WL 1433371, at *21 (S.D.N.Y. Mar. 30, 2015) ("Any error made by the ALJ . . . was . . . immaterial and provides no basis for reversal or remand."); *Gonzalez v. Colvin*, No. 14-CV-6206, 2015 WL 1514972 at * 19 (S.D. N.Y. Apr. 1, 2015) ("Any shortcoming in the ALJ's explanation is harmless error that does not require remand.").

2008) (finding the plaintiff's missed appointments with her counselors and failure to adhere to medication regimen weighed against the plaintiff's credibility).

In sum, the ALJ did not make any material misrepresentations about the medical evidence of record. Instead, he properly determined that Plaintiff's allegations with regards to her physical capabilities were not supported by the objective medical evidence. Accordingly, the Court affirms the ALJ's RFC determination regarding Plaintiff's physical abilities as supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 14) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 11) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: March 30, 2020
         Rochester, New York